WILLIAM M. RICHARDSON v. MYRON TOLMAN ET AL.

*Foreclosure for portion of consideration withheld to perfect title.*

The grantee of land was allowed to withhold part of the consideration for a specified time in order to take up an outstanding title, and to secure the money withheld, he gave a mortgage. *Held* that it was no defense to its foreclosure that to perfect his title he had paid the amount withheld to a person who claimed to have obtained a quit-claim of the outstanding title, when it was neither averred in the answer nor shown by the proofs that the latter claim was valid or truthful.

Appeal from Clinton. Submitted June 23. Decided October 13.

FORECLOSURE. Defendant appeals. Affirmed.

*Spaulding & Cranson* for complainant.

*Dart & Clark* for defendants.

GRAVES, J. On the 16th of March, 1870, the complainant held the east half of the south-east quarter of section 28 in township 5 north of range 1 west in Clinton county, under a title based on sales for taxes for 1852 and several years preceding, and on that day he executed a grant of the premises to the defendant Myron Tolman for the consideration of $3000, of which some $560 consisted of a mortgage already on the property in favor of one Peacock and which Tolman assumed. The character of the title was mutually understood and the parties took into consideration what chance there was for any *bona fide* claim from the real holder of the original title; and assuming that it might become necessary to get it in, they agreed upon a sum within which as between themselves, the price should be confined. They decided that $500 of the consideration money should be kept back by Tolman for the space of five years to enable him to take care of that title in case of its coming forward, and to buy it up if neces-

sary. They agreed that five years would be sufficient time
and five hundred dollars more than enough to take care of
the title. They agreed also that for the purpose of carrying
out their intent in this respect the best course was for Tolman
and wife to give a mortgage back on five years' time for $500
with interest and containing a condition conforming to their
understanding on the subject of the separate title. They
pursued this plan and the mortgage was executed and deliv-
ered, though not recorded until the 28th of September, 1871.
The special condition was framed in these terms: " And in
case there should be failure of the title to the land above
described, or any part thereof, by reason of which said party
of the first part should be obliged to pay therefor, the amount
he is obliged to pay shall be deducted from this mortgage."
Tolman was let into possession and has since held it without
disturbance. At the expiration of the five years Richardson
filed this bill to foreclose the mortgage.

The defendant Fuller had taken a deed from Tolman sub-
sequent to the mortgage, but had given it priority of record.
In joining him as defendant the bill alleged that he bought
with actual notice of the mortgage. As he admits having
paid nothing his position in the case raises no question.

At the time of the bargain between Richardson and Tol-
man, and when they exchanged the deed and mortgage, it
appeared by the records, and was known to both, that the
purchaser from the United States was one Samuel Hall, and
it was the title which originated in that grant that the parties
had in view and the title to which they referred in the condi-
tion set forth in the mortgage. There seems to have been
no other title not in harmony with that based on the sales for
taxes. The defense set up in the answer is in substance that
soon after the mortgage one Washington G. Wiley repre-
sented to defendant Tolman that he had become the owner of
the premises by purchase from Hall, the grantee of the
United States, and he, Wiley, demanded possession; that
he, Tolman, notified complainant and insisted on being pro-
tected and requested complainant to effect a settlement with
Wiley if possible; that complainant refused to do anything,

and thereupon he, Tolman, purchased of Wiley and paid him
$500, and subsequently tendered complainant the accrued
interest, together with sufficient to defray the expense, and
demanded that he discharge the mortgage.

The first observation suggested is that this statement makes
out no defense whatever. If admitted, it affords no answer
to the bill. No case within the condition can be deduced
from it. There is no averment that in fact Wiley obtained
or held any title or any color of title, or that his representa-
tion had a particle of truth in it. The most that is pretended
is that he set up a claim of having become owner under pur-
chase from Hall, and that defendant Tolman was content to
give him $500 for what he claimed.

But this is not all. The state of facts proved in regard to
Wiley's ownership not only varies from the allegations in the
answer, but distinctly negatives the existence of any defense
based on the condition. No deeds were introduced, and the
evidence respecting the title comes from the mouths of wit-
nesses. The answer relied on Wiley to substantiate his claim
of having acquired the title Hall purchased from the United
States, and to speak with considerable reserve, his deposition
is considered uncandid and is not satisfactory. But the
depositions of Hall and of Mrs. Fitzsimmons and her daugh-
ter are decisive. Wiley went to see Hall at Elmira, in New
York, in May, 1870, for the purpose of getting a quit-claim
deed from him, and Hall swears that he had conveyed the
land to Fitzsimmons, now deceased, in 1840, and that he
informed Wiley of the fact, and that he had no interest
whatever to convey ; that he finally, on Wiley's request, gave
him a quit-claim deed, and observed to him at the same time
that he would quit-claim the whole State of Michigan to him
for $5 ; that Wiley then remarked that he had been at some
trouble and handed him not to exceed $25, and as he thinks,
the sum of $5. The case strongly resembles in this part of
it one of the leading features of *Hanold v. Bacon* 36 Mich.
1–7. Hall had nothing to sell, and so notified Wiley, and
Wiley bought nothing of him. The transaction was a farce.
As a transfer there was nothing real in it. The title which

arose by the sale from the United States to Hall was not obtained, because that title was vested elsewhere and not in Hall, as Wiley well knew, and what the condition in the mortgage contemplated was the getting in of that title and not the concoction of false and deceptive papers to be held out as embracing it.

Nothing has been gained to the title complainant gave and on which the mortgage was based. The original title is as much outstanding as ever, and the possibility of its interfering with the tax title is not cut off now unless by something else than Hall's deed to Wiley. If Tolman suffered himself to be duped by Wiley he cannot force the consequences upon complainant. He must bear them himself.

The decree granting foreclosure should be affirmed with costs.

The other Justices concurred.